MILLER, Judge.
Plaintiff Chester J. Godeau appeals the judgment dismissing his claim for personal injuries suffered when his wrecker and tow were rearended by an overtaking truck. We affirm.
Defendant Roadway Express, Inc.’s 71,000 pound rig was being driven by Walter Alls. He was eastbound on Highway 190 approximately one mile west of Law-tell. Alls was driving about 45 mph at 2:30 a. m. during a light rain. His lights were on dim because there were two oncoming cars approaching. Just as the first car was even with Alls and the second car was close behind it, Alls saw the ghost of the rear end of an unlighted truck tractor about 50 feet ahead and applied his brakes. Shortly after Alls’ rig struck the rear of the unlighted truck tractor, the second oncoming car reached the accident site and received some damage in the accident.
The unlighted truck tractor was being towed easterly by a wrecker driven by Go-deau at a speed of about 5 mph. Godeau knew that there was no light on his tow, but believed that the lights on his wrecker were adequate warning to all motorists— overtaking as well as oncoming.
*917 The trial judge held that Alls was negligent for operating his rig at an excessive speed under the hazardous conditions that existed and for failing to keep a proper lookout; that the lights on the wrecker could have and should have been seen by Alls. Godeau was found negligent for not placing operating lights on the rear of the towed vehicle. The trial judge reasoned that Godeau should have placed lights on the rear of the tow even though his wreck-' er lights were visible to overtaking motorists.
Godeau contends that:
(1) Since the lights on the wrecker were visible to overtaking motorists, Go-deau was not negligent for failing to place operating lights on the towed vehicle.
(2) If Godeau was negligent, this negligence was not a proximate cause (cause in fact) of the accident.
(3) In the alternative, Alls had the “last clear chance” to avoid the accident.
The trial court’s finding that the lights on the wrecker were visible to overtaking motorists is not supported by the evidence. While the wrecker was properly lighted for oncoming motorists, the tow ob-secured those lights from the overtaking motorist.
The top lights on the wrecker were between 7 feet and 7 feet 8 inches from the road and were placed within two feet of the center of the wrecker’s cab. The towed vehicle was the tractor portion of a Ryder Truck Lines rig, and the top of that tractor was 8 feet 9 inches from the road. Since the front end of the tractor was lifted so that the wheels were about 6 inches off the road, we find that the rotating beacon and the two way (front and back) flashing beacon were both obscured. It was established that only one of the two tail lights on the wrecker was operating. It is conceded or at least not argued to the contrary, that this tail light was obscured by the tow.
There were two lights mounted on the wrecker’s “headache rack”. These four inch fixtures were 6 feet 7 inches above the road and were positioned on the right and left side of the wrecker. The distance between these fixtures was 6 feet 8 inches from center to center. Notwithstanding testimony that the wrecker was examined on the morning of the accident and one of these two fixtures was found to have no lens facing aft and the other was found to have no lens or bulb (and no sign of broken material in either one) the trial judge’s finding that lights were visible to overtaking motorist must rest on a finding that these outboard lights were flashing. We note that the driver of the vehicle in tow who was riding with Godeau, did not testify that these side lights were flashing. We do not find manifest error in the finding that these lights were flashing. However, these lights were obscured by the towed Ryder tractor.
The cab of the towed tractor was 6 feet 6 inches wide. Although the wrecker’s headache rack fixtures were 6 feet 8 inches from center to center, the line of vision of the overtaking driver was not perpendicular to either fixture. Alls’ line of vision angled from his position in his cab so that the right light was certainly obscured and the left light was either partially or completely obscured.
The trial judge did not explain which light or lights Alls could see, nor did he explain how the physical findings (which are not contested) permitted Alls to see the lights. We reverse this factual determination finding manifest error in the holding that Alls should have seen the wrecker’s lights. We nevertheless hold that the trial court properly found that Alls was negligent in driving at an excessive speed under the existing hazardous circumstances and that this negligence was a legal cause of the accident.
Relevant to our factual determination concerning the lights is the fact that Go-deau had been working on the disabled Ryder tractor for some time before it was de *918 cided that he should return in his truck to the shop to get the wrecker. Godeau admitted that he could have obtained a set of auxiliary lights to install on the towed vehicle, but he didn’t think it was necessary. In making that decision, Godeau did not take into account the huge size of the Ryder tractor and the relatively smaller size of the wrecker.
The trial judge properly concluded that a cause in fact of this accident was Godeau’s failure to comply with LSA-R.S. 32:304’s requirement that:
A. Every motor vehicle, trailer and semi-trailer and any other vehicle which is being drawn at the end of a train of vehicles, shall be equipped with at least one tail lamp mounted on the rear, which, when lighted as hereinbefore required . . . shall emit a red light plainly visible from a distance of S00 feet to the rear, provided that in the case of a train of vehicles only the tail lamps on the rearmost vehicle need actually be seen from the distance specified. . . .
B. Every tail lamp upon every vehicle shall be located at a height of not more than 72 inches nor less than 20 inches measured as provided in R.S. 32:302.
Godeau failed to comply with both provisions of this statute. Godeau’s conduct was grossly negligent when judged from the “reasonable man” standpoint. The lighting on his wrecker and towed vehicle was totally inadequate. Furthermore his statutory violation was a “cause in fact” of this accident. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970).
Godeau contends that even if he was negligent, this negligence was not a proximate cause (cause in fact) of the accident. We consider the issue in terms of the “duty-risk” test. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
The primary purpose of the statute is to protect the overtaking vehicle and its occupants by giving adequate warning of the presence of the slower lead vehicle and its tow. The statute necessarily imposes a duty on the operator of the towed vehicle to adequately light his vehicle and tow, in such a manner that overtaking vehicles will be alerted to their presence. Here there was an unusually slow moving vehicle consisting of the wrecker and the unlighted towed tractor, which was so large that it obscured the wrecker’s warning lights. Present here also were the additional elements of reduced visibility and the headlights of the two oncoming vehicles, which helped to obscure the presence of the wrecker and its tow. Additionally, defendant’s driver was a member of the class of persons which the statute specifically aims to protect from the risks of unlighted towed vehicles. Therefore, Godeau breached his statutory duty and this breach was a legal cause of the accident. Dixie Drive It Yourself v. American Beverage Co., supra.
Having found Godeau negligent for failing to place lights on his tow which were visible to overtaking motorists and this negligence was a legal cause of the accident, we turn to plaintiff’s third contention that Alls had the last clear chance to avoid the accident. This argument was based on the trial court’s finding that Alls should have seen the warning lights on the wrecker and discovered Godeau’s position of peril in time to avoid the accident.
Under our finding of fact, the decision in Thomas v. Lumbermen’s Mutual Casualty Company, 146 So.2d 275 (La.App. 3 Cir. 1962) applies. We there held the lead driver could not recover under the last clear chance doctrine absent a showing that the overtaking driver actually discovered or should have discovered the lead ve- *919 hide’s peril in time to avoid the collision, The facts here fit the rule stated in Thomas.
The trial court judgment is affirmed at appellant’s cost.
Affirmed.